UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID ANDREWS,

    Plaintiff,

v.

B. MARTINEZ, et al.,

    Defendants.

Case No. 17-cv-04363-YGR (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff David Andrews, a state prisoner currently incarcerated at the Correctional Training Facility ("CTF"), has filed the instant *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff has filed an amended complaint, which is the operative complaint in this action. Dkt. 31. The Court notes that Plaintiff was convicted of second-degree murder in 2002, and he was sentenced to a term of fifteen years to life. *Id.* at 7. His claims stem from alleged constitutional violations that took place during his parole hearings in 2015 and 2016.

Specifically, Plaintiff alleged a due process claim against the following Defendants who are either at CTF or employed by the California Board of Parole Hearings ("BPH"): Correctional Counselors B. Martinez, G. Walters, and F. Gutierrez; Warden S. Hatton; Correctional Case Records Analyst Supervisor C. Dzioba; Correctional Officer C. Hoyt; Commissioner A. Anderson; Chairperson J. Shaffer; Attorney C. Christensen; Psychologist C. Carman; and Correctional Case Records Manager P. Melendrez. *Id.* at 3-6.[1] The following is taken from the Court's January 23, 2018 Order of Partial Dismissal and Service:

> Liberally construed, it appears that Plaintiff is attempting to state a due process violation. In essence, Plaintiff alleges that his prison file contains false, inaccurate and incomplete information, which was unfairly used against him at his September 8, 2016 parole suitability hearing (during which the Court assumes he was denied parole). The inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

> under the Due Process Clause. *See Paul v. Davis*, 424 U.S. 693, 711-714 (1976). However, [Plaintiff's] due process claim may arise instead from a deprivation authorized by state law. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976) (recognizing that interests protected by the Due Process Clause may arise from two sources—the Due Process Clause itself and laws of the states). A deprivation authorized by state law may also amount to a deprivation of a procedurally protected liberty interest, if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance*.*" *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). Liberally construed, Plaintiff has stated a cognizable claim of a violation of due process against Defendants Martinez, Walters, Gutierrez, Carman, Hoyt, and Anderson.

Dkt. 15 at 2. Meanwhile, Plaintiff's claims against Defendants Hatton, Dzioba, Shaffer, Christensen, and Melendrez were dismissed because Plaintiff did not allege that they actually or proximately caused the deprivation of any federally protected right. *Id.* (citing *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)). Thereafter, as mentioned, Plaintiff filed his amended complaint. Dkt. 31. The Court screened the amended complaint and found that liberally construed, it stated a cognizable due process claim against previously-dismissed Defendants Hatton, Dzioba, Shaffer, and Melendrez. Dkt. 30 at 5. However, the Court dismissed Plaintiff's claim involving Defendant Christensen, the attorney who represented him during his parole hearing on November 17, 2015, because "a defense attorney, or in this case an attorney who represents a prisoner during a parole hearing, does not act under color of state law when performing an attorney's traditional functions, including responding to the commissioner during a parole hearing, as was alleged in the instant case." *Id.* at 6 (citing *Polk County v. Dobson*, 454 U.S. 312, 318-19 (1981)).

On November 1, 2018, Defendants moved to dismiss the case. Dkt. 42. Plaintiff opposed Defendants' motion to dismiss on February 27, 2019, and filed his motion for summary judgment in his opposition. Dkt. 46. Defendants filed a reply on March 13, 2019. Dkt. 47. Defendants separately filed an opposition to Plaintiff's motion for summary judgment. Dkt. 50.

On July 9, 2019, the Court denied Defendants' motion to dismiss because their grounds for dismissal were more properly raised in a motion for summary judgment, and it directed Defendants to file a motion for summary judgment by August 13, 2019. Dkts. 61, 67.

1    The parties are presently before the Court on Defendants' motion for summary judgment (dkt. 68) and Plaintiff's previously-filed motion for summary judgment (dkt. 46), which are both submitted as oppositions and replies have been filed as to both motion (dkts. 50, 56, 72, 73). Defendants specifically move for summary judgment on the following grounds: (1) there are no genuine issues of material fact concerning Plaintiff's due process claims; (2) Defendant Anderson is entitled to absolute quasi-judicial immunity; (3) Plaintiff's claims are barred by the Eleventh Amendment and *Heck*'s[2] favorable-termination rule; and (4) Defendants are entitled to qualified immunity. Dkt. 68 at 7-8.

Also before the Court are Plaintiff's renewed motion for referral to the Court's Alternative Dispute Resolution Program, his motion for joinder of parties, and Defendants' motion to strike Plaintiff's improper separate statement of facts. Dkts. 51, 55, 59.

Having read and considered the papers submitted, and being fully informed, the Court GRANTS Defendants' motion for summary judgment, DENIES Plaintiff's motion for summary judgment, and terminates the remaining aforementioned pending motions as moot.

## II. BACKGROUND

### A. The Parties

At all times relevant to this action, Plaintiff was housed at CTF. Dkt. 31 at 3. Defendants Anderson, Carman, and Shaffer were BPH staff members. *Id.* at 3-6. Defendants Dzioba, Gutierrez, Hatton, Hoyt, Martinez, Melendrez, and Walters were CDCR staff members at CTF. *Id.* Plaintiff sues each Defendant in their official and individual capacity and seeks monetary damages. *Id.* at 2.

### B. California Regulations Regarding Parole in 2015 and 2016

Title 15 of the California Code of Regulations and the California Penal Code provide California's law related to parole. These laws establish the procedures for parole consideration-hearings to determine if a California inmate is suitable for parole. Cal. Code Regs., tit. 15 §§ 2281, 2402. According to the Penal Code, an inmate's initial parole consideration or suitability

---

[2] *Heck v. Humphrey*, 512 U.S. 477 (1994).

3

hearing should be held one year prior to the inmate's minimum eligible parole date. Cal. Penal Code § 3041(a) 2015. The regulations and the Penal Code provide that the inmate has a right to attend the parole consideration hearing, ask and answer questions, and speak on his behalf. *Id.* at § 3041.5; Cal. Code Regs., tit. 15 § 2247. These laws also provide that the inmate is entitled to be represented by an attorney. Cal. Penal Code § 3041.7; Cal. Code Regs., tit. 15 § 2256. However, the inmate may waive these rights. Cal. Code Regs., tit. 15 §§ 2247, 2256.

California regulations under Title 15 section 2247 also provides that an inmate has the right to review his/her central file before their parole hearing, and "a prisoner shall have the opportunity to enter a written response to any material in the file." Cal. Code Regs., tit. 15 § 2247. Moreover, an inmate has the right to present relevant documents to the hearing panel, but the documents should be brief, pertinent, and clearly written. *Id.* § 2249. The documents may cover any relevant matters such as mitigating circumstances, disputed facts, or release planning. *Id.*

In addition to these hearing requirements, Title 15 § 2240(a) provides that, "[p]rior to a life inmate's initial parole consideration hearing, a Comprehensive Risk Assessment ("CRA") will be performed by a licensed psychologist." Cal. Code Regs., tit. 15 § 2240(a). The regulations further provide that the CRA:

> will consist of both static and dynamic factors which may assist a hearing panel or [BPH] in determining whether the inmate is suitable for parole. It may include, but is not limited to, an evaluation of the commitment offense, institutional programming, the inmate's past and present mental state, and risk factors from the prisoner's history. The [CRA] will provide the clinician's opinion, based on the available data, of the inmate's potential for future violence. [BPH] psychologists may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence.

*Id.* § 2240(b) (brackets added).

Moreover, at least one month before the hearing, the inmate shall be notified of the week during which the parole suitability hearing will be held. *Id.* § 2246. But the inmate can waive his/her parole suitability hearing for any reason. *Id.* The parole suitability hearing panel chair can also postpone or continue the hearing upon its own motion or at the request of the inmate for various reasons including the absence or untimeliness of required CDCR or BPH "notices,

4

1  documents, reports, or required prisoner accommodations." *Id.* § 2253(d)-(e). Finally, the

2  regulations provide that an inmate has a right to receive a copy of the hearing decision, which

3  includes the information considered and the reasons for the decision. *Id*. §§ 2254-2255.

**C. Plaintiff's Parole Hearings**

**1. November 17, 2015 Parole Hearing**

On June 30, 2015, Plaintiff was informed that he was scheduled for his initial parole hearing on November 17, 2015. Dkt. 31 at 8. On August 11, 2015, Plaintiff reviewed his C-file in preparation for his upcoming parole hearing. Galvan Decl. ¶ 7, Ex. B at 130. On October 7, 2015, Dr. Carman, a BPH psychologist, interviewed Plaintiff and prepared a CRA report. Dkt. 31 at 8. Commissioner Minor (a non-defendant) conducted Plaintiff's parole suitability hearing on November 17, 2015. Maciel Decl. ¶ 3, Ex. A at 4:4-21. Plaintiff attended the hearing with Attorney Christensen, and both of them actively participated. Maciel Decl. ¶ 3, Ex. A at 5:1-10:21, 17:23-19:6. Plaintiff stated to the commissioner that he had no mobility, hearing, vision, reading, or mental health issues that would affect the parole hearing. Maciel Decl. ¶ 3, Ex. A at 6:8-8:21. Plaintiff also confirmed to the commissioner that he signed a Notice of Hearing Rights Form several months before the hearing (April 30, 2015), and that his assigned correctional counselor went over the hearing rights with him. Maciel Decl. ¶ 3, Ex. A at 9:1-17. Plaintiff and Attorney Christensen were asked whether Plaintiff's rights were met so far to continue with the hearing. Maciel Decl. ¶ 3, Ex. A at 9:14-10:20. Plaintiff stated that he was provided a copy of the CRA report at the hearing, and that he needed more time to prepare his objections. *Id.* Thus, the hearing was postponed to give Plaintiff a chance to review the CRA report and prepare his responses. Maciel Decl. ¶ 3, Ex. A at 13:15-14:19, 17:23-19:6. At the hearing, Plaintiff was informed that documents he provided to the hearing panel (a total of 77 pages) were scanned and added to his BPH files, and the originals were returned to him. Maciel Decl. ¶ 3, Ex. A at 19:3-22. Plaintiff was not denied parole during this hearing. Maciel Decl. ¶ 3, Ex. A at 21:4-11.

**2. March 22, 2016 Parole Hearing**

Plaintiff's next parole hearing took place on March 22, 2016, before Defendant Anderson, a BPH Commissioner. Maciel Decl. ¶ 4, Ex. B at 28:4-29:10. In preparation for the hearing,

5

Plaintiff reviewed his C-file on January 15, 2016. Galvan Decl. ¶ 7, Ex. B at 130-131. At the March 22, 2016 hearing, Plaintiff elected to represent himself and waived representation by an attorney. Maciel Decl. ¶ 4, Ex. B at 31:20-32:24. During the hearing, Plaintiff stated that his parole-hearing rights were not met because his documents were not included in the BPH's file. Maciel Decl. ¶ 4, Ex. B at 44:21-48:23. Defendant Anderson allowed Plaintiff to submit up to 20 pages of documents at the hearing, but Plaintiff stated that he wanted to submit 112 pages of documents and an additional 20-page response to the psychological risk assessment report. Maciel Decl. ¶ 4, Ex. B at 49:3-50:1, 52:16-21. Defendant Anderson informed Plaintiff that under the rules, he could only submit up to 20 pages of documents on the day of the hearing. Maciel Decl. ¶ 4, Ex. B at 50:2-11. The hearing panel took a short recess to allow Plaintiff time to identify the documents he wanted to submit. Maciel Decl. ¶ 4, Ex. B at 51:4-52:8. After a recess, the panel informed Plaintiff that they had 77 pages of documents in Plaintiff's C-File that he submitted for the BPH's review. Maciel Decl. ¶ 4, Ex. B at 56:23-57:10. Plaintiff stated that he submitted 112 pages and that 35 pages were missing. Maciel Decl. ¶ 4, Ex. B at 57:6-10. Therefore, the hearing was continued again to give Plaintiff an opportunity to include any missing documents in his files. Maciel Decl. ¶ 4, Ex. B at 57:2-58:8. Defendant Anderson advised Plaintiff to accept an attorney to help him in the next hearing process. Maciel Decl. ¶ 4, Ex. B at 56:7-14. Plaintiff was not denied parole during this hearing. Maciel Decl. ¶ 4, Ex. B at 57:21-58:18.

### 3. September 8, 2016 Parole Hearing

On September 8, 2016, Plaintiff, who again elected to represent himself, attended his parole hearing before Defendant Anderson. Maciel Decl. ¶ 5, Ex. C at 61, 63:4-65:5. Plaintiff was provided with notice of the hearing and his hearing rights three months earlier on June 3, 2016, and again a month before the hearing on August 5, 2016. Maciel Decl. ¶¶ 6-8, Exs. D-F; Maciel Decl. ¶ 5, Ex. C at 65:7-11. On August 5, 2016, Plaintiff declined to review his C-file records. Galvan Decl. ¶ 7, Ex. B at 130-131. Plaintiff submitted documents in support of his case for parole suitability before the hearing, and the hearing panel confirmed receiving and considering those documents. Maciel Decl. ¶ 5, Ex. C at 68:16-25. The hearing panel also

1  reviewed Plaintiff's C-file prior to the hearing. Maciel Decl. ¶ 5, Ex. C at 64:24-25. During the
2  hearing, Plaintiff was given further opportunity to submit additional documents in support of his
3  case for parole-suitability consideration. Maciel Decl. ¶ 5, Ex. C at 69:1-16. At the beginning of
4  the hearing, Plaintiff requested to return to his cell and retrieve "some papers" that would help him
5  to "make [his] presentation," but Defendant Anderson denied the request stating that Plaintiff
6  knew about the hearing for a long time, and he should have brought the alleged presentation
7  papers with him. Maciel Decl. ¶ 5, Ex. C at 66:15-68:15. Plaintiff also objected to the presence of
8  Madera County District Attorney's representative at the hearing, but Defendant Anderson
9  overruled Plaintiff's objection. Maciel Decl. ¶ 5, Ex. C at 69:20-70:8.

10        The parole hearing took more than three hours, and the following topics and issues were
11  raised and discussed: (1) a CRA report prepared by Dr. Carmen; (2) Plaintiff's objection to Dr.
12  Carmen's CRA report; (3) Plaintiff's background information and visitation history; (4) Plaintiff's
13  arrest and conviction history; (5) post-conviction factors including Plaintiff's rules-violation
14  reports, education, certificates of accomplishments, work, self-help, and custody level while at
15  CDCR; (6) the facts of the commitment offense and Plaintiff's attitude towards the offense; and
16  (7) letters of support. Maciel Decl. ¶ 5, Ex. C at 70:16-85:11, 139:11-163:3; 139:11-144:15, 177-
17  178; 71:2-72:8; 80:19-103:3, 106:12-25; 103:13-106:7, 107:4-126:9, 126:15-127:20; 88:23-
18  103:12; and 134:3-138:10. Plaintiff was further given multiple opportunities to add any issue,
19  information, or document that was not covered during the parole-suitability hearing or that was not
20  included in the record. Maciel Decl. ¶ 5, Ex. C at 133:20-25, 138:19-25, 161:3-4, 176:1-6.
21  Plaintiff actively participated in the hearing by asking and responding to questions. Maciel Decl.
22  ¶ 5, *see generally* Ex. C. And Plaintiff laid out the reasons why he was suitable for parole
23  including his stable social history; good relationships with his mother, siblings, and friends;
24  remorse for past wrong doings; that he was not a danger to society; that he paid for the crime; did
25  not participate in violence in prison; and that he was old enough to know better. Maciel Decl. ¶ 5,
26  Ex. C at 176:14-181:7. Defendant Anderson commended Plaintiff for using the legal process to
27  remove the "sex offender" designation from his file and putting the issue off the table. Maciel
28  Decl. ¶ 5, Ex. C at 180:5-9.

Plaintiff was denied parole, however, because the panel determined that despite some circumstances of suitability, Plaintiff posed an unreasonable risk of danger to society. Maciel Decl. ¶ 5, Ex. C at 183:3-13. Specifically, the panel determined that Plaintiff's conviction offense was atrocious and cruel, Plaintiff had an unstable social history with lengthy criminal conduct, Plaintiff lacked a lengthy period of positive rehabilitation, he failed to show adequate signs of remorse and taking full responsibility, he blamed his criminal conduct on everyone else including the victim, he gave conflicting statements during and prior to the hearing, he tried to minimize every crime that he had committed, he was unable to follow rules and regulations in prison and blamed correctional officers for his rules-violation reports at prison, he suffered antisocial-personality disorder, was unable to understand what it was going take for him to be successful on parole, and he stated during the hearing that he was willing to use force to resist what he considers an unlawful order. Maciel Decl. ¶ 5, Ex. C at 183-197; *id.*, ¶ 10, Ex. H. All these reasons were explained to Plaintiff at the hearing. *Id*.

At the end of the September 8, 2016 hearing, Defendant Anderson advised Plaintiff what he needed to do to improve his chances of getting parole the next time. Maciel Decl. ¶ 5, Ex. C at 195:22-196:24. The denial of Plaintiff's parole on September 8, 2016 has not been reversed or invalidated by a court or administrative decision. Maciel Decl. ¶ 11.

### D. Plaintiff's Parole-Related Documents

Plaintiff alleges that on July 26, 2016, he submitted the following documents for inclusion to the BPH section of his C-file: (1) Written Response to File Materials, (2) Memorandum/[Cal. Code Regs., tit. 15 §] 2236 Prisoner's Version, (3) 37-Page Documentary Evidence Volume, (4) 53-Page (Trial) Reporter's Transcript Excerpts Volume, and (5) CRA Objection, Challenge and Rebuttal. Dkt. 31 at 14-15; Galvan Decl. ¶ 6, Ex. A. On July 28, 2016, all five records that Plaintiff submitted for inclusion into his file were scanned into the BPH section of his C-File. Galvan Decl. ¶ 6, Ex. A.

### III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate

that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented declarations and supporting exhibits from BPH Chief Deputy of Program Operations S. Maciel and CTF Litigation Coordinator and Custodian of Records E. Galvan. Dkts. 68-1 to 68-5. Meanwhile, Plaintiff has filed his declaration and supporting exhibits in support of his motion for summary judgment. Dkts. 46-1 to 46-2. Plaintiff has also filed his verified complaint and opposition. Dkt. 1 at 28; Dkt. 72 at 10. The Court construes his complaint and opposition as affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### 1. Official Capacity Claims

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. However, Defendants argue that Plaintiff's claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. Dkt. 68 at 24.

The Eleventh Amendment to the United States Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985) *abrogated on other grounds as noted in Lane v. Pena*, 518 U.S. 187, 198 (1996). Unless a state has waived its

Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Eleventh Amendment immunity extends to suits against a state agency, *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR and BPH entitled to Eleventh Amendment immunity), and to suits for damages against state officials sued in their official capacities, *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). California has not waived its Eleventh Amendment immunity with respect to claims brought under Section 1983 in federal court. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Therefore, because the CDCR and the BPH are state agencies, their employees, who are the aforementioned Defendants, sued in their official capacities are immune from suit for monetary damages.

Accordingly, Plaintiff's claims for monetary damages against Defendants in their official capacities are DISMISSED as barred by the Eleventh Amendment.[3] Because it is clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend. As such, Defendants' motion for summary judgment is GRANTED as to all claims against Defendants in their official capacities. Dkt. 68.

### 2. Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995).

The standard analysis for a procedural due process claim "proceeds in two steps: [courts] first ask whether there exists a liberty or property interest of which a person has been deprived, and if so [they] ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Interests that are procedurally protected by the Due Process Clause may

---

[3] Eleventh Amendment immunity does not bar Plaintiff's claims against Defendants sued in their individual capacities. *See Graham*, 473 U.S. at 165-66.

11

arise from two sources—the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Cooke*, 562 U.S. at 220 (citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)). Thus, any liberty interest arising out of California's statutory scheme granting its prisoners the right to parole is "a *state* interest created by California law." *Id.* (emphasis in original); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (States "may under certain circumstances create liberty interests which are protected by the Due Process Clause.").

### a. State-Created Liberty Interest in Parole

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a State's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest. *See Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987); *Greenholtz*, 442 U.S. at 11-12. In such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16. The Ninth Circuit has held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).

### b. Sufficiency of Process

Once a court has determined that the alleged deprivation implicates a cognizable liberty interest, the next step in the due process analysis is to determine whether "the procedures followed by the State were constitutionally sufficient." *Cooke*, 562 U.S. at 219. The Supreme Court has held that, in the context of parole, "the procedures required are minimal." *Id.* at 220. Adequate process is afforded to prisoners in the parole context so long as they are "allowed an opportunity to be heard" and are "provided a statement of the reasons why parole was denied," *id.*; "[t]he Constitution does not require more," *Greenholtz*, 442 U.S. at 16.

The inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury under the due process clause of the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 711-14 (1976); *see also Reyes v. Supervisor of DEA*, et al., 834 F.2d 1093, 1097 (1st Cir. 1987) (no claim presented where inmate failed to allege false information maintained by police department relied upon to deprive him of constitutionally protected interest); *Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (mere existence of inaccuracy in FBI criminals files not state constitutional claim). In certain limited circumstances, however, a claim of constitutional magnitude may be raised where a prisoner alleges 1) that information is in his file, 2) that the information is false, and 3) that it is relied on to a constitutionally significant degree. *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925 (1979); *cf. Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (Ninth Circuit refusing to reach whether "in proper case" there may be constitutional right grounded in due process clause to accurate prison records). If the information is relied upon to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake, and the due process clause is called into play. *Paine*, 595 F.2d at 202. An adverse decision in such matters as transfer or status classification may also have collateral consequences touching on the liberty interest. *Id.* An administrative decision regarding such purely internal matters as work assignments, however, cannot be said to reasonably affect a liberty interest. *Id.* Further, if the error is merely technical, no claim for relief will lie. *Id.* Federal jurisdiction will exist over such a claim only if the prisoner has first made a request for expunction to prison officials, which has been denied. *Id.*

### c. Analysis

Plaintiff generally alleges that Defendants violated his due process rights in connection with his parole hearings on November 17, 2015, March 22, 2016, and September 8, 2016. Dkt. 46 at 20. Specifically, Plaintiff alleges that, pursuant to the liberty interest created by California's parole scheme, he was entitled to and deprived of certain procedures including the right to speak at his parole hearings, to contest the evidence against him, and to submit written material for consideration by the panel. Dkt. 31 at 6-7. Such deprivation, Plaintiff contends, was caused by

the "defendants' use of controverted practice, procedures and policies that circumvent[ed] the intent of the state codes, rules and regulations" and further imposed on him "atypical and significant hardship." Dkt. 46 at 20. Plaintiff further alleges that Defendants engaged in

> a systematic course of conduct that reveals the pattern of blocking [his] efforts to enter written responses to unduly inserted false narratives and other untrue indicia contained in his file and of obstructing the presentment, on the record, of mitigating documentary evidence and material squelching [him] during proceedings wherein [he] is entitled to speak, all done as a false narrative and untrue record building maneuver.

Dkt. 31 at 6-7; *see also id.* While Plaintiff accurately identifies the minimum due process required in the context of parole, he contends that he was not afforded the opportunity to be heard or to refute the allegedly false evidence presented against him. Dkt. 46 at 21. Meanwhile, Defendants assert that Plaintiff was afforded all procedural protections required under the Constitution. Dkt. 68 at 16-19. The Court agrees with Defendants.

Although there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Bd. of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

In *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011), the Supreme Court explained that, in the context of parole, its earlier cases had "held that the procedures required are minimal." The Court earlier had "found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of

14

the reasons why parole was denied." *Id.* at 220 (citing *Greenholtz*, 442 U.S. at 16); *see Miller v. Or. Bd. of Parole and Post-Prison Supervision*, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in *Cooke* that in the context of parole eligibility decisions the due process right is <u>procedural</u>, and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision[.]") (emphasis in original).

Here, the undisputed evidence shows that Plaintiff was provided with these minimal protections. First, Defendants did not violate Plaintiff's due process rights in connection with the November 17, 2015 and March 22, 2016 parole hearings because Plaintiff was not denied parole in either of those hearings. Maciel Decl. ¶ 3, Ex. A at 21:4-11; Maciel Decl. ¶ 4, Ex. B at 57:21-58:18. Moreover, both of those hearings were postponed to future dates to give Plaintiff an opportunity to review the CRA report and prepare his responses, and to give Plaintiff an opportunity to include any missing documents in his C-file. Maciel Decl. ¶ 3, Ex. A at 13:15-14:19, 17:23-19:6; Maciel Decl. ¶ 4, Ex. B at 57:2-58:8. Further, Plaintiff concedes in his opposition that he was not denied parole at either the November 17, 2015 or the March 22, 2016 parole hearings and that both were postponed to future hearing dates for his benefit. Dkt. 72-1 at 2-3, 9-12. Defendants argue that Plaintiff cannot state a due process claim against them "merely because the hearings were postponed to accommodate his requests." Dkt. 68 at 17. Again, the Court agrees with Defendants. As discussed above, California law allows a parole suitability hearing panel chair to postpone or continue an inmate's parole hearing upon its own motion or at the request of the inmate for various reasons, including to allow the inmate to prepare required documents, as in the present case. *See* Cal. Code Regs., tit. 15 § 2253(d)-(e). To show a due process violation from a delayed hearing, a prisoner must show prejudice from the delay. *See Camacho v. White*, 918 F.2d 74, 78-80 (9th Cir. 1990). However, the Court finds that Plaintiff has failed to demonstrate prejudice resulting from any delay because he was denied parole at the delayed hearing on September 8, 2016. Furthermore, the record shows that Plaintiff waived any claim based on any alleged delayed hearings because he consented to postponing the hearings. *See* Maciel Decl. ¶ 3, Ex. A at 17:23-23:13; Maciel Decl. ¶ 4, Ex. B at 55:19-58:18.

Next, as to the September 8, 2016 parole hearing, the undisputed evidence shows that

15

Plaintiff was given two advance notices of his parole suitability hearing on June 3, 2016 and on August 5, 2016. *See* Maciel Decl. ¶¶ 6-8, Exs. D-F; Maciel Decl. ¶ 5, Ex. C at 65:7-11. Plaintiff was allowed to submit documents in support of his case for parole suitability prior to the hearing. *See* Maciel Decl. ¶ 5, Ex. C at 68:16-25. Prior to the hearing, the documents he submitted in support of his parole suitability application were scanned into his prison file. *See* Galvan Decl. ¶ 6, Ex. A. Defendants argue that Plaintiff cannot maintain a due process claim against any Defendant based on the September 8, 2016 parole hearing because he was "provided with all the process that he was due." Dkt. 68 at 18. The Court agrees. As mentioned above, in *Cooke*, the Supreme Court found that inmates subject to California's parole statute received adequate process because they "were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." 562 U.S. at 220.

As to the first requirement relating to "an opportunity to be heard," Plaintiff was given an opportunity to testify at length concerning various parole suitability factors and to speak to the panel throughout the parole hearing (which was over three hours long), including submitting documents in support of his case for parole suitability prior to the hearing for the panel's consideration, and was given an opportunity to make a closing statement. *See* Maciel Decl. ¶ 5, Ex. C at 175:3-181:10; *see also* Dkt. 72-2 at 16. Specifically, Plaintiff testified at length that he was suitable for parole and why certain records including Dr. Carmen's CRA report should not be considered in determining his parole suitability, *see* Maciel Decl. ¶ 5, Ex. C at 70:16-85:11, 139:11-163:3; 139:11-144:15, 177-178; 71:2-72:8; 80:19-103:3, 106:12-25; 103:13-106:7, 107:4-126:9, 126:15-127:20; 88:23-103:12; and 134:3-138:10. Moreover, Plaintiff was given multiple further opportunities to add any issue, information, or document that was not covered during the hearing or that was not included in the record. *See* Maciel Decl. ¶ 5, Ex. C at 133:20-25, 138:19-25, 161:3-4, 176:1-6. Secondly, after the panel members conferred, they found Plaintiff to be unsuitable for parole release and provided him with a statement of reasons for their denial. Maciel Decl. ¶ 5, Ex. C at 183-197; *id.*, ¶ 10, Ex. H. As long as the prisoner received at least that much process, the federal court's inquiry is at an end. *See Cooke*, 562 U.S. at 220; *Roberts v. Hartley*,

16

640 F.3d 1042, 1047 (9th Cir. 2011) (substantive due process claim fails because petitioner "received all of the process to which he was due under the applicable tests from *Greenholtz* and *Cooke*"). The Ninth Circuit recognized that *Cooke* clearly holds that the "responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts." *Roberts*, 640 F.3d at 1047 (quoting *Cooke*, 562 U.S. at 222). Therefore, because the record shows Plaintiff was provided the minimal procedural protections, his complaint does not establish a due process violation.

In opposition, Plaintiff asserts that his "opportunity to be heard and to challenge the evidence against him was clearly violated by experts." Dkt. 72 at 7. Specifically, Plaintiff contends that the "[s]ubmitted documents were not entered into the file, not considered, and not included and incorporated by reference into the record of the hearing" in violation of California Code of Regulations, tit. 15, § 2254. Dkt. 72-2 at 7. In support of this argument, Plaintiff offers as evidence a statement by Defendant Anderson that Plaintiff was trying to "rewrite" the file. *Id.* (citing Maciel Decl. ¶ 4, Ex. B at 38:2-3). However, this statement was made at the March 22, 2016 hearing. *See* Maciel Decl. ¶ 4, Ex. B. As the Court previously discussed, Defendants did not violate Plaintiff's due process rights in connection with the March 22, 2016 parole hearings because Plaintiff was not denied parole at that hearing. *See* Maciel Decl. ¶ 4, Ex. B at 57:21-58:18. To the extent that Plaintiff's argument amounts to a challenge to the panel's decision to deny parole on September 8, 2016, the Court finds that Plaintiff was provided the minimum protections and thus, there is no further federal due process inquiry. *See Cooke*, 562 U.S. at 220-22.

Finally, Plaintiff's amended complaint alleges that his prison file contained false, inaccurate and incomplete information, which was unfairly used against him at his September 8, 2016 parole hearing. *See* Dkt. 31 at 18. If such false information was relied upon to deny parole, Plaintiff's conditional liberty interest could be at stake, and the due process clause may be called into play. *See Paine*, 595 F.2d at 202. However, Plaintiff offers only *conclusory* allegations, which do not amount to a due process violation. For example, he does not elaborate on which false, inaccurate and incomplete information from his prison file was relied upon by the panel in

17

denying parole. Whereas, the record reflects that the panel denied parole primarily because it determined that despite some circumstances of suitability, Plaintiff posed an unreasonable risk of danger to society. Maciel Decl. ¶ 5, Ex. C at 183:3-13. Although self-serving affidavits may establish a genuine issue of material fact, they may do so only when "they state facts based on personal knowledge and are not too conclusory." *Rodriguez*, 265 F.3d at 902. Here, Plaintiff's allegations in his amended complaint that related to his prison file containing false, inaccurate and incomplete information are conclusory assertions and are insufficient to establish a genuine issue of material fact. *See id.* Plaintiff has proffered no foundational evidentiary support for his assertions that Defendants relied on such false, inaccurate and incomplete information to deny parole, and the record indicates the contrary. Specifically, the panel denied parole for various reasons, including the atrocity of Plaintiff's conviction offense, lengthy history of criminal conduct, failure to show adequate remorse or to take full responsibility, blaming his criminal conduct on everyone else including the victim, and inability to follow prison rules and regulations, among others. *See* Maciel Decl. ¶ 5, Ex. C at 183-197; *id.*, ¶ 10, Ex. H. Moreover, as mentioned above, the denial of Plaintiff's parole on September 8, 2016 has not been reversed or invalidated by a court or administrative decision. *See* Maciel Decl. ¶ 11.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's due process claim. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id.*; *Celotex Corp.*, 477 U.S. at 323. Therefore, Defendants' motion for summary judgment is GRANTED.[4]

### B. Plaintiff's Motion for Summary Judgment

In resolving Defendants' motion, and in considering whether a triable issue of fact exists, the Court has reviewed the evidence and argument in Plaintiff's motion for summary judgment.

---

[4] The Court finding that Defendants are entitled to summary judgment on the merits of the due process claim obviates the need to address Defendants' alternative arguments.

18

The evidence and argument in the Plaintiff's motion for summary judgment do not defeat Defendants' motion. Having determined that Defendants are entitled to judgment as a matter of law because there is no genuine issue of material fact with respect to Plaintiff's due process claim, Plaintiff's motion for summary judgment is necessarily DENIED. Dkt. 46.

## V. CONCLUSION

For the reasons outlined above, the Court rules as follows:

1. Defendants' motion for summary judgment is GRANTED. Dkt. 68.

2. Plaintiff's motion for summary judgment is DENIED. Dkt. 46.

3. The Clerk of the Court shall terminate all remaining motions as moot, including Plaintiff's renewed motion for referral to the Court's Alternative Dispute Resolution Program, his motion for joinder of parties, and Defendants' motion to strike Plaintiff's improper separate statement of facts. Dkts. 51, 55, 59. The Clerk shall also close the file.

4. This Order terminates Docket Nos. 46, 51, 55, 59 and 68.

IT IS SO ORDERED.

Dated: September 27, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge